Parties arguing, would step forward and identify yourselves and tell us who you are and who you represent. Please call the case. 11-3658 Unifund CCR Partners v. Mohamed S. Shah Who are Unifund? Good morning, Your Honors. Katherine Weiler on behalf of Plaintiff Appellant Unifund CCR Partners. Good morning, Your Honors. I'm Daniel A. Edelman and I represent Mr. Shah. Each side has 15 minutes. If you keep it interesting, we'll give you more time. And we're going to tell you we're very familiar with the facts of the case. Shah, number one, the case law. I'm looking forward to an interesting argument. Any time you're ready, Mrs. Weiler. Weiler. Weiler. Thank you, Your Honor. May it please the Court. As Your Honors know, my name is Katherine Bosky Weiler. I represent Plaintiff Appellant Unifund CCR Partners. At this time, I'd like to ask for three minutes reserved for rebuttal time, please. Sure. Today we ask the Court to reverse the ruling of the District Court granting Mr. Shah's motion to dismiss and determine that Unifund met all of Illinois' pleading requirements under both Section 8B of the ICAA and under the Illinois Code of Civil Procedure. As Justice Quinn noted, Your Honors are familiar with the facts and the history of Shah 1. This is a different issue from Shah 1. In Shah 1, this Court evaluated the pleadings requirements under the Code Section 2-403 and, relatedly, whether the requirements of Section 8B of the ICAA could be met through multiple related documents. What this Court did not consider and what this Court did not address were the pleadings requirements under Section 8B. That is the issue now pending before this Court. And in order to answer that issue, this Court must consider two specific questions. First, what must any party plead in order to maintain a case under Section 8B? What must they plead? We are at a pleadings phase in this litigation. The second point this Court must address is whether Unifund met all of those requirements in this case. The ultimate issue here is did Unifund have the right to sue to collect on Mr. Shah's debt? The answer is yes, Unifund did. And it properly pleaded that it had that right. Unifund should be allowed its day in court in this case. Counsel, do you still insist the last in line, the final assignment, is the only one that needs to be asserted? Yes, Your Honor, because of the language of Section 8B. Where do you get that? From the language of the statute itself. The very beginning of Section 8B starts, Assignment for Collection. The Assignment for Collection is the final assignment where the account Well, how do you get to that? It's the final assignment. How do you get to the final assignment? There were three assignments before this. Correct. You still have to identify the chain of title for any account. That's required under Section 2-403, and no one disputes that. So you absolutely have to establish how you, as the assignee for collection purposes, came to own that account. But the issue here is what Unifund had to do was go through multiple pleadings, and in each one attach additional documents. So how far back do you go? That's the question for this Court. What Unifund attempted to do was meet the requirements of those two statutes before this Court had offered guidance as to how specifically that needed to be accomplished. Well, how do we know the legislature intended that to be the singular, an assignment, not the prior assignments? Where do you get that? From the actual language, again, of the statute. It is singular, assignment for collection. It is not plural. I'm sorry. Go ahead, Your Honor, of course. Which statute, 8.5 and 8.6, it's now exempted? Specifically 8B. What 8.5 and 8.6 inform us is that debt buyers were never intended to have to identify each. I should clarify, the specific information we're talking about is the date of transfer and the consideration paid for an assignment. We're not talking about simply ownership of an account or transfers of an account or assignments of an account. That information needs to be identified under Section 2-403. To Your Honor's question, you are talking about the revisions to the statute that the legislature implemented at the beginning of this year that specifically exempt debt buyers from the requirements under Section 8B. The reason that is noteworthy is because that establishes that debt buyers were never intended to be responsible for establishing the amounts paid, the consideration paid, and the date of transfer. What is that argument? Is there case law in that? There's not case law. There are brand new provisions in the statute. What I'm saying, a change in the law, how do we interpret that? If you look at the specific language in the new provisions, and as Justice Simon noted, that's 8.5 and 8.6, 8.6 points to what a debt buyer specifically shall do in order to adhere to the requirements of Section 8B, excuse me, exempts a debt buyer from adhering to these requirements. If the legislature, at the time it originally passed Section 8B, had intended for a debt buyer to be bound by a requirement. Were there even debt buyers around when they passed the statute? Absolutely, Your Honor. That industry really kind of grew in the 80s and 90s, did it not? It did, and that has been ample opportunity for the legislature to revise the statute, which it does regularly. This is an active statute. I know, but it was just recently amended. It was just recently amended to specifically address this point. Section 8B wasn't recently amended to address this point. No, I understand. The definition of debt buyer and the fact that they're exempted from 8B, that's all in the new, that's in the amendment. That's correct. So what you're saying is that this Act never anticipated debt buyers at all? No, Your Honor, that's not what I'm suggesting. What I'm saying is that Section 8B did not anticipate that a debt buyer would be required to identify the date of a transfer and the consideration paid for a transfer for each and every step in the chain of title. That's what I'm suggesting. Certainly Section 8B is applicable, but it is not intended, in the context of this case, it was not intended that the requirements of Section 8B would apply to each and every step in the chain of title. But shouldn't someone who's getting sued for a credit card know where this is all coming from? If somebody named Cliffs sued me for a credit card debt, I would have no idea what they were talking about. Shouldn't it go all the way back to the beginning? It absolutely should to identify chain of title. And, again, that's what's required under 2-403. Equitable or legal title? It depends on what the transfer is of. If the transfer is a sale, which includes equitable and legal title, then certainly that needs to be identified under Section 2-403. The same is true if it's an assignment of legal title. Section 8B, though, is different. Section 8B does not apply to transfers of equitable title. Section 8B applies to transfers of legal title. That is a specific legal term, assignments for collection. Assignments for collection are assignments of legal title only for collection purposes. So that's a different question. Could the enactment recently made by the General Assembly lead to standing problems since they're now exempt from going back through the entire chain? It couldn't, Your Honor, because Section 2-403 still exists to protect that issue. So that's what you're solely relying on? On Section 2-403 because it absolutely addresses the point and it absolutely addresses Justice Conner's concern that if you are the individual who has this debt, you should be advised of who owns your debt. You should be advised of the chain of title. That's what Section 2-403 ensures happens. It specifically requires that the entity who has the assignment, the assignee, identify each and every single one of those steps. Without that process, the assignee doesn't have the right to sue. Counsel, let me ask you this question. I'm looking at a case called People v. None, 77 Illinois 2nd, 243, which says an amendatory change in the language of a statute creates a presumption that it was intended to change the law as it existed before. So if we are to presume that the legislator wanted to change the law and change it to exempt debt buyers, wouldn't we then make the presumption that it included them before? No, and it's a subtle distinction, but there is a distinction. Section 8B always applied to debt buyers, and Unifron does not dispute that Section 8B applied to it at the time at issue here. The distinction is this. The new amendments to the statute address whether or not a debt buyer is bound by the requirements of Section 8B now. There's no dispute about that. What we're suggesting the new amendment to the statute implies is that debt buyers were never meant to be bound to provide all of this information for each and every step in the chain of title. They are bound by the statute. Go back up. You're saying that debt buyers were bound by 8B before. Absolutely. Are there certain parts you want to pick out that they're not bound by? No, they were absolutely bound by 8B. The question is the meaning of 8B, the scope of 8B. We're not trying to pull anything out of 8B other than precisely what 8B applied to. Why are you arguing that? It would seem to me that under Nunn and its Blacklear law, it would help your position to argue that they make it clear in the amendment that buyers are exempted from 8B, that 8B doesn't apply to them. Why do you want it to apply to them? How does that help your cause? They have been exempted now. They have been exempted. That's exactly what the statute states. Justice Connors, if we were to read the statute, the amended statute, shouldn't it be applied retroactively? This amended statute, you mean Section 8.6? The public act that changed the definition of debt buyers. Why shouldn't that be applied retroactively? Doesn't it help your argument if we were to poll that it should be retroactively applied? It should be applied to this case. If Your Honor anticipates that that's how the legislature intended to. . . Maybe I'm mistaking Justice Connors' question. And it may be that I'm misunderstanding Justice Connors' question. If I am, I apologize. Oh, I'm sorry. Never mind that. No, no, Your Honor. I think it's. . . You think it's the opposite. If this Court. . . That's why it's confused. If this Court anticipates that Section 8.6, and it is confusing Section 8B, Section 8.6, if this Court anticipates that the revision to Section 8.6 should be applied retroactively, in that case, then certainly there is no concern about whether 8B was properly addressed in the pleadings in the circuit court because they shouldn't apply here. What I'm suggesting to Justice Connors is that there's no question that at the time the pleadings were filed in Shaw, Section 8B was in force, in effect. I don't know that there's any reason we would suggest that Section 8B could be applied retroactively. There's nothing that suggests that from the statute. But the larger point is this, that even if this Court considers that Section 8B did apply to debt buyers at the time in question, if Your Honor disagrees with that, we're all for it, if Section 8B did apply at the time in question, Uniform still met those requirements. That's the more important and larger point. And that can be seen, again, by the language of the statute. That's the language that we are all bound by. It's the language that the legislature used to clarify its intentions here as to exactly what an assignee for collection is required to do in a pleading. Counsel, let's talk about the amendments for a minute, the definition of debt buyer and that they're exempted from 8B. What's the legislative history of that? And what was the argument on the floor? Is there anything other than the passage of this amendment? There isn't that I was able to find, Your Honor. If there is, it's not something that was readily available. All we could find is that the amendments were enacted, and they were enacted in order to clarify that the requirements of Section 8B do not apply to debt buyers. That's the only thing we were able to find. Which doesn't help us in figuring out the amendment interpretation. The only information that we have is what's written on the page. The only language that we can use is what's on the page of the statute. We don't have the legislative history, at least we didn't, that we could find available to help explain what the legislature did. But that came after our decision in SHOW 1. That's correct. That's correct. That it does apply to debt buyers, right? Isn't that why the whole thing is in SHOW 1? Everybody is arguing about the holding at footnote or headnote 23. We reiterate, however, Section 8B requires each country of assignment, et cetera. The previous paragraph reads, so based on the record before us, however, it does not appear that the assignment of defendant's account from Citibank to Unifund, which is their buyers, satisfies Section 8B because it does not specifically state the consideration of the account. Right? The Court, there were two questions there. The first is you are correct, Your Honor, that the amendments to the statute were not in effect at the time that SHOW 1 was decided. Right. The second point is the specific language of that passage that the Court drafted, that the Court opined on, concerns assignments. The Court used that specific language, assignment. I understand that the argument, again, the sentence beginning, however, Section 8B. The other one I read to you, though, concerns buyers. When this Court said that it does not appear the assignment of defendant's account from Citibank to Unifund, Citibank started this thing by giving Mr. Shah, foolishly, credit. Then they sold that, did they not? They did. And when they sold that to Unifund Portfolio, is Unifund Portfolio A, is that only the title for collection, or are they a buyer? It was a sale. It was a complete sale of legal and equitable title. Right. And so we held them, under that sentence, that it should have been, when we remanded the case, that they should, on remand, show the consideration, and now this is a legislature act, after that, saying, no, you don't have to do that. Is that correct? That is correct. That is correct. All right. That is correct. And to the extent that that is what the Court intended to say, that sentence is not, it's not a binding statement in the sentence. It's dicta. If that's what the Court intended. I was dicta when it talks about this case on a certified question, where they say, by the way, trial court, we're remanding it to you, and we note that the plaintiff has failed to prove this up. And that's precisely why, Your Honor, because it was on a certified question. It wasn't specifically interpreting those statutes. That's exactly why. Counsel, can I ask you just, is there any connection between Unifund CCR and Unifund Portfolio ALLC? They're all separate entities, Your Honor, separate partnerships, separate corporate entities. They're completely divided. Are they related? Do they have similar, they certainly, obviously, they have a similar name. There is a larger umbrella that has multiple companies, and so, for example, you noted, or I'm sure you've noticed that Palisades is, I'm sorry, CLPS is a wholly owned subsidiary of Palisades. There is a relationship between many of these entities that they are totally separate corporate entities. Is there any end to the sale and assignment of debt? There doesn't need to be, Your Honor. It's a free market system. There can be any number of transfers. There can be a single transfer. There can be 25 transfers. But that's the more important point for this Court to address because, say, for the sake of discussion, there were 25 sales, sales of debt, not assignments of debt, but full sales. Certainly, at that point, the ultimate assignee for collection is going to have to identify each and every single one of those sales in the chain of title in order to meet the standing requirements under Section 2-403. But the question is, what would that entity, the assignee for collection, have to allege in order to proceed on a complaint for collection under Section 8B? That's the other important point for this Court to address. At this point in the proceedings, this is a pleadings phase. These facts have all been alleged, as required, under Section 8B, under the language of Section 8B. And, in fact, if you look at subsection E in the statute, subsection E states, no litigation shall commence in the name of the licensee as plaintiff unless there is an assignment of the account that satisfies the requirements of this section. No litigation shall commence. That doesn't say specifically that all of the documents establishing that assignment need to be attached to the complaint. It states they need to exist. Now, we recognize that under Shaw 1, this Court stated very specifically, you need to attach those documents to your complaint. That's exactly what Unifund did in this case. But that, yes, Justice? Do these affiliated entities assign or trade these debts between themselves? I'm not sure that I understand the question. In other words, are there transactions within this cluster that you've discussed among them as to assignments or sales? The only transactions that have occurred related to this debt are specifically laid out in the complaint. So you have one, two, three, four, two sales, two assignments. As to this debt? That's correct. What about generally? What about the other debts? Generally, it would depend on the portfolio and the circumstances in each individual case. I can't answer that question specifically except as to this case. Sorry, Your Honor. But it is worth noting that there is, as we point out in our brief, a recent Federal District Court case that specifically addresses exactly the language I was referring the Court to in Section 8B, Subsection E. And that's... Let me back up. The question really was because of that. An affiliated entity could, in order to comply with the identity of the transaction, assign within its own network to another one and have that as the conveyor. As the S&E for collection? That could certainly happen, but that does not change the requirement, at least as it was in effect at the time of this litigation, at the time the complaint was filed. That doesn't change the requirement that those transactions still need to be identified, even if they're within a related network of companies. They still need to identify each transaction of chain of title, because as title is transferred, whether it's legal or equitable, there is a transaction involved. So even if the companies are connected, that's still required under the statute, under both statutes, under the Code and under Section 8B. And 2403 requires the dates of the transfers. Is that right? 2-403 does require that. I believe it does. But not consideration, right? Not consideration. That's correct. Exactly. And that, again, speaks to Justice Conner's question about isn't a debtor entitled to know the specific information about who owns his or her debt. That is required under 2-403. 2-403 states, such person, meaning the plaintiff, shall in his or her pleading on oath allege that he or she is the actual bona fide owner thereof and set forth how and when, as Justice Quinn noted, he or she acquired title. That is required. Counsel, as far as pleading for a debt buyer, what needs to be in that plea? What needs to be included? Everything that is required under Section 2-403 needs to be included, and that includes all of the dates of transfer for each and every step in the chain of title. And as far as proof at trial, what else is needed? As far as proof at trial, in the context that we're discussing, meaning in the context of this particular case. Where's a debt buyer? What proofs do they have to show? A debt buyer is going to have to show the effective date of the assignment for collection and the consideration paid for that assignment. And if there is a dispute as to whether or not the debt buyer actually owns that individual's debt, that individual has the opportunity to offer that as an affirmative defense. Those are the defenses you would anticipate would be offered at trial. Did you say they have to show consideration at trial? Yes, for the assignment for collection, absolutely. They would have to show the consideration paid for that assignment. Yeah, I'm only talking about a debt buyer. What does a debt buyer have to show? They just show that. That's correct. That's correct in the posture of this case. Now, with the revisions to Section 8.6, exactly. But as we're discussing in the context of this case, at trial, the debt buyer would have to establish for the assignment for collection, would have to establish the effective date of the assignment and the consideration paid for that assignment. I'm quite sure I've gone over my time. Thank you, Your Honors. It is moving along. May it please the Court, Counsel. Let me start by addressing Justice Conner's last question. What does a debt buyer ask an eighfer collection have to plead? I think that under this Court's decision in Shaw 1, under such decisions as Candice v. Ricketts, Razor Capital v. Ontow, Cavalry v. Rocha, and others, I think that 2606 of the Code of Civil Procedure and Supreme Court Rule 282 in the case of a small claims require the attachment or incorporation of assignments. So because where the plaintiff is not the original payee of the alleged obligation, the documents allowing the plaintiff to sue on that obligation are documents, instruments on which the claim is founded, and they ought to be attached. Let me turn to the narrowest question before the Court, namely, whether the decision of the trial court was correct. There are four assignments alleged in this matter. Citibank to Unifund A, Unifund A to Cliffs, Cliffs to Palisades Collection, Palisades Collection to Unifund CCR. The last two, I think, are conceded supposedly for purposes of collection only. Neither of those two complies with 8b. They don't even come close. The Cliffs-Palisades transaction does not state the consideration on the record. A document was filed under seal, but if you look at it, it contains a number of alternatives, and it is not possible to determine which one applies. It does not in any way link the transfer to any specific debt allegedly owed by Muhammad Shah. In fact — Well, they're not sold and bought individually, right? So if we were to write a requirement that they would have to show these individually, is that not a heavy burden? Not really. These are done in writing. There are account numbers. You can redact a field quite easily. What is necessary is a page. Somebody executes it on the bottom, and the hundred or so accounts listed on the page are transferred. That's what's in fact done, but for whatever reason, Cliffs and Palisades did not see fit to do that here. In fact, if you look at the date of this document, the Cliffs-Palisades document attached to the complaint, it's May 23rd, 2003, which is more than three years prior to the time that Citibank allegedly parted with the Shah debt. It is a form which contemplates a series of future transfers. It does not and could not have assigned the Shah debt itself. The future transfers, if they are in writing, are not documented at all. They're not before the court. They're not attached to any complaint, any of the multiple complaints that Unifund filed. You simply have an affidavit and now a verified complaint alleging that there was a transfer. It is not in writing. How does that hurt Mr. Shah? There's no allegation on your part, is there, that Mr. Shah suffered from a sharp practice, is there, that somehow he did not owe $16,000 to Citibank before his debt was sold and resold and resold? Well, when we file a 2619 motion, we admit the allegations of the complaint. Yes, you do. So I'm not entitled to say that. If you would simply ask me what our position is, Mohammed Shah did at one point deal with Citibank. We dispute the amount of the debt, and we certainly dispute that Unifund CCR has anything to do with it. Okay. But going back to the purpose, that's why we're here. It's public policy. You mentioned that in your brief at some length. The public policy behind the Illinois Collection Agency Act and the Fair Debt Collection Practices Act is not to protect consumers, right? It is to protect consumers, among other ways, by assuring and creating a record that the party suing a consumer to enforce an obligation, in fact, either owns the obligation or has a legal right to enforce it. The Cliffs Palisades document does not do that. It also, by the way — Well, Cliffs is a buyer, right? I'm sorry? Cliffs was a buyer, a debt buyer, right? Cliffs was a debt buyer. The transfer to Palisades was for collection purposes. Contrary to 8B, it actually says that Cliffs retains the title. It contemplates that Palisades, not Unifund, may file lawsuits in its name. It does not have the consideration. It does not link to a specific debt. It doesn't comply with 8B. The next transaction is even more peculiar, Palisades to Unifund CCR. While it is said to be an assignment for collection and couldn't be anything else because the transferor of Palisades doesn't have equitable ownership, it actually purports to be a complete transfer of all title. It says, quote, All of ASNOR's right title and interest in and to the receivables for purposes of sale, lease, or assignment of the receivables, close quote. They can't sell more than something they don't have, and they don't have it, right? You just said, Palisades does not have the title. If you look into it in detail, yes. But if you look at the original complaint, it's pages 2 and 3 of the record, it actually alleged that plaintiff Unifund CCR is the successor and interest of the account from Citibank South Dakota, having, quote, It's not true. They're at best asking for collection. And that's what the trial court ruled on in this issue? This is why we should affirm the circuit court's ruling? It wasn't based on the fact? Well, it didn't comply with 8B. And apart from whether the first two links in the chain have to comply with 8B. Well, what did the circuit court say about that? That's what we're here to review, right? We're here to review what? Well, I think the court reviews the judgment, and I think the reasoning of the circuit court was that none of the four complied. If any of the four don't comply, I think it has to be affirmed. Let me put to one side for a second whether the first two have to comply. I think they do. But the last two clearly do not. If you compare 8B with what is in these two documents, they don't comply. In fact, they're not really assignments at all. They are contracts contemplating future assignments. If after Unifund A and Cliffs allegedly acquired the Shaw debt from Citibank, some further writing transferred them, that was never put before the court. I think the court would have to go. But it's been said on LMI for scores of years that assignments can be made on almost any words. Am I correct in that? There's no magic talisman words we require for an assignment. Theoretically, you can have an oral assignment. You cannot under 8B. It specifies a writing executed by proper corporate authorities. Furthermore, the first two assignments are not claimed to be oral. All of these transactions are carried out through documents. So I don't think we get to the issue of whether you could have an oral assignment. That's not how entities like this do business. There is a writing. They just didn't want to produce it. We then get through a series of other complaints in which it finally comes to light that we're dealing with two alleged assignments for collection. The complaints repeatedly state, up to the second amended complaint, that plaintiff was a purchaser of the debt when that was plainly not the case. And had Shaw attempted to defend the case himself, I think even most lawyers would not be sufficiently familiar with what to look for to realize that there is something wrong here. And there was something wrong. We wound up with the last two assignments for collection purposes, which on their face don't comply with 8B. So I think that's the narrow issue before the court, and the judgment below has to be affirmed. With respect to the question. So that I understand, are you getting to the issue of having multiple collections? Was that in your last statements? In what you were just discussing, does that apply to the concerns that were in the briefs about making certain that there wasn't multiple collection attempts on the same debt? Yes, Your Honor. I think that when Unifund CCR files its original complaint claiming to be a purchaser, and it's now admitted that it is not a purchaser, that is exactly the kind of abuse that the legislature sought to curb. The correct and total chain of title should be alleged and, insofar as based on documents, which is the case here, attached. So that the court may determine what interest, in fact, passed, as opposed to having an affidavit which says that a purported transfer of all right title and interest really is something else. All the cases you said along these lines all involved defendants, consumers who actually made a payment, though. Is that right? I'm sorry? Looking at pages 23 to 24 of your brief, what you were just discussing with Justice Simon, public policy, we wish to protect consumers from having multiple suits filed against them after they paid their debt. That's a wonderful, excellent public policy. What evidence is there in this case that Mr. Schott paid his debt, that this is a legitimate concern that we have for Mr. Schott? Well, I mean, even according to the complaints in the briefs, we certainly made payments to Citibank. Oh, somewhere along the line, sure. The answer is that the point cannot be one which can only be raised by somebody who pays the wrong party. Why? Because the whole purpose of this is prophylactic. It is to prevent the wrong party from suing. And the kind of documentation we have here raises that issue, and that's why you have a statute which sets forth what is required. Let me get into AP, which now excludes sales. APF says if a collection agency takes assignments on account of two or more creditors against the same debtor and commences litigation against that debtor in a single action in the name of the collection agency, then one, the complaint must be stated in separate counts for each assignment, and two, the debtor has an absolute right to have any count severed from the rest of the action. Has the action of the General Assembly eliminated the application of this in the sales, regarding sales? No, Your Honor. The portion you just quoted has its main application with medical debts. You have a series of related debts. There are agencies which take assignments for collection and file suit in their name on medical debts and often will have multiple accounts, and that gives the debtor the right to have them severed. It doesn't have any direct application to this case. What's the standard as to which cases it has application? Only medical cases? Well, no, but that's where you have multiple accounts owed by the same debtor and assigned to the same collection agency. So you're dealing with a full amount? Correct. Well, but again, as you point out, it's kind of the experience in this area of law. So what does 8.6, the amendments to 8.6 mean? Again, saying it to raise the purpose. That doesn't apply in this case. There is no formal legislative history, but I went down and testified concerning it, so I can shed some light on it. Yeah, please. After 8.b was made applicable to debt buyers, which was effective January 1st, 2008, 2007 amendment, certain consumer advocates, including myself, argued that outright debt buyers had to comply with 8.b. There was an unreported federal court decision involving resurgence by Judge St. Eve, which rejected that. The debt buying industry wanted certain clarifications of the Collection Agency Act. One was to put in a provision that said that an outright debt buyer didn't have to comply with 8.b. It is our position that where you have a purchase followed by an assignment for collection that does trigger 8.b, and 8.b itself requires a showing of the complete chain of title, the language of 8.b, which was not changed, still has in it that you must show title passing to the collection agency. Inherent in that is the proposition that the party purporting to pass title to the collection agency had title to pass. So it still requires that a chain of title be laid out. But what 8.6 did was to make, I'm sorry. No, I'm waiting for you. What does it say? What 8.6 did was make inapplicable to outright debt buyers certain provisions which were burdensome and not really applicable, one of which was 8.b. The others dealt with things like a bond requirement, a trust account requirement, and a requirement of a certain formality in providing instructions to counsel, none of which applied to somebody who was basically a principal as opposed to an agent for the beneficial owner. Right. But going back to what you just said about 8.6 applying to, it said that 8.b no longer applies to debt buyers. Does that, the amendment then, understanding that nobody is saying, currently except for me perhaps, that it applies to your client, that does that then change the sale or the way you would look at the transaction between CLIFS and Palisades? Your argument today is that CLIFS versus, when he sold it, he assigned it for collection to Palisades, that is covered under 8.b. Did the amendment to 8.6 change that? No. CLIFS to Palisades is an assignment for collection. Palisades to Unifund, it was supposed to be an assignment for collection, although that's not what it purports. Let's assume that it's been what everybody has said it has been until an hour, half an hour ago, that it's an assignment. Did the amendment to 8.6, again, understanding it doesn't apply to you, would that have changed the requirement, the applicability of 8.b to the transaction from CLIFS to Palisades? No, Your Honor. The last two, if they're intended to be assignments for collection, have to meet the requirements of 8.b. The only issue is Citibank, are the transfers from Citibank to Unifund and Unifund to CLIFS. Okay, are now clearly out under 8.6 if it applied to you, and it doesn't apply to you, right? Well, I don't think it applies. I think that when you're dealing with the regulation of the form of a contract, you don't apply it retroactively. I also think that by its very terms, 8.b requires something of those two transactions. At the very least, you have to show that in the first assignment for collection, which is CLIFS to Palisades, you have title passing to the collection agency. Unless Citibank passed title to Unifund and Unifund passed title to CLIFS, title could not be passing to the collection agency. Does Unifund, did Citibank, Unifund, and Unifund-CLIFS have to set forth the consideration and other, well, basically consideration and date? I'm somewhat undecided. I think that you can read 8.b as continuing that in effect, but if your honor, as you indicated, does not, is not of that opinion, at the very least, you have to attach whatever the actual assignment is. And the fact is, is that there are documents which have consideration, which should identify what- The original documents? Citibank to Unifund and Unifund to CLIFS? Yes. Yes. Now, the entire document was not attached. I understand that. And that's your argument, so that in the future, on every single credit card debt, for the collection agencies, and that's what we're dealing with here, they must receive all the original paperwork from the cardholders, the card manufacturers, the people who issue, the card issuers. Would that be right? They must, at the very least, receive something which transfers the debt and references the specific debt. Okay. Counsel, one of the amicus briefs argues that this, if we affirm the trial court, this will end debt collection in the State of Illinois. Do you have any comments on that? I think that's dead wrong. I think it will end a lot of abuses in the State of Illinois. Other states are imposing requirements like this and has not shut down the collection industry. All we're asking, really, is that debt buyers and collection agencies that act on behalf of debt buyers comply in the same manner as everyone else who is suing on a debt which was not originally payable to them. They have to have, and if it is a writing, they have to attach the writing showing that the original payee transferred the obligation to the supposed assignee, and if that instrument sets forth dates consideration, that has to be included. And at the very least, it has to show that the specific account was transferred. In some manner, that permits identification of that account as the one that was transferred. I don't think that is something which is excessive to protect the public. There have been documented abuses, many documented abuses, where minimal information is found, is provided, where the information is altered or updated through skip tracing, and it is quite possible, and I have encountered cases, where the wrong party is sued, where people are sued on debts which have been paid, otherwise resolved, discharged in bankruptcy. There are problems, and proper documentation is first a solution to those problems, it avoids them, and second, if there is a problem, it permits identification of how it occurred and who was responsible. You argued at one point about law of the case should restrict what we can do today. What is your theory on that from your briefs? Well, I think that if UNIFON was not satisfied with the answers to the certified questions, it should have sought review from the Illinois Supreme Court, rather than permit the trial court to enter judgment in accordance with the directions given, and then take another appeal which raises the same questions it sought to raise in the first instance. And what is your best case to support that argument, that we should be barred or not? I cited in the briefs. Okay, that is a fine one. Unless your honors have some questions. I have a question about, there is a discussion in Greece about forward flowing. This is an active marketplace that there are transactions that continually exist on either the sale or the assignment of these obligations. What is the overall impact of those who may get protection under one, as if it is in one way through AB, but not through sales because of the reporting? Does that have any impact on the overall industry? The problem created by forward flow agreements is it is an agreement to transfer debts over some future period of time. The problem created is identifying in some reliable and conclusive manner what debts are then transferred. And frankly, documentation has been lacking in this regard. It is the more transfers that take place, and you can have, for example, one of the things that Unifund does is take packages of debts from somebody like Citibank, break them up, and sell them to people that are interested only in, for example, Illinois debtors. The more transfers, and the more transfers that are not simply of the whole portfolio, the more difficulty you have in assuring that the party who ultimately sues has the right to sue on that debt, as opposed to some other person. And I think that by enforcing 2606 and Rule 282, requiring this attachment of documents, showing transfer of specific debts, and enforcing 8B at least as to purported assignments for collection purposes, the last two involved here, I think that goes a long way to preventing this type of problem, and if problems do exist, allowing identification of who's responsible for the problem. And can you, but you're not really suggesting, are you, Mr. Edelman, that we should reach the 282 issue? What goes on in small claims court? Well, correct, this is not a small claims, but the language in 2606 and 282 is basically the same. I take it from the amicus that brought that issue up, that they're complaining that the debt collectors, the collection agencies are getting, they feel they're getting short tripped over in our courts, which has not been my experience, but in small claims court, I think they can afford to take an appeal or two and bring small claims issues up to us, since they're not the person working for us. But what the industry would like is to simply file something like the original complaint in this action, a one-page complaint with an affidavit that does not accurately set forth a chain of title, purports to be an absolute purchase when it isn't, and is just totally inaccurate. And there are difficulties, particularly in situations with forward flow agreements, in identifying the debts. One of the articles, one of the things that was cited by the AARP amicus brief is an article by Ms. Petty, it's on page 22 of the brief, which quotes a local Illinois debt buyer. And what this debt buyer did was he purchases debts, discovers that the records are in bad shape, and according to this article had his people perform skip tracing on the information supplied. In other words, on the three sheets of the three-page line of data that, in this case, was allegedly obtained from Citibank, and they just changed it to reflect the results of skip tracing. He then resold all or part of the portfolio. What has he just resold? Has he resold what the original creditor supplied? No, he's basically resold, without saying it, the accuracy of what some hourly employee did in terms of skip tracing. It's very easy to make mistakes. And I think the legislature intended to protect people against that sort of activity. It was a 2007 article, just before the Collection Agency Act was made applicable to debt buyers. And it's a major problem. And I ask that the Court affirm the judgment below. If nothing else, on the narrow grounds that the two alleged assignments for collection plainly do not comply with AP. Thank you, Mr. Earnest. Thank you. Ms. Weiland, briefly. First to Mr. Edelman's last point about forward flow agreements. The concerns that have been identified by courts, including business services, which specifically discuss the issue of clearly stating the date of transfer on an assignment. The concern is not having multiple dates that could mean different things. Not having, for example, in business services, March 7th of 1997 at the top of the document and March 17th of 1997 at the bottom of the document. And that is the situation that Mr. Edelman was just describing. When someone's doing a skip trace and it looks like it's unclear about exactly when what was transferred and how, and the dates are arbitrarily changed. That's not the concern with a forward flow agreement. A forward flow agreement simply identifies the date of transfer as the date that the accounts are actually transferred to that final person in the chain. There's not confusion about the specific date. The other point that's worth noting that's relevant to that is the idea of the consideration that was identified in these specific transfers. The consideration was identified. It's in a document that's under seal. It's proprietary information. It's based on a percentage of the amount recovered. That's why it's considered proprietary. It's given to the trial court. The trial court had no issue with the contents of that document. It did specifically identify the amount as opposed, again, to business services, which stated that the suggestion that the consideration paid is for valuable consideration. That is inadequate. That does not specifically state the consideration paid. Now, to Justice Conner's question about public policy, and you raised a point mentioned by one of the amici that this will certainly severely affect the entire business industry, the entire debt collection industry in Illinois, yes, it will impact that industry. Because what this court is considering doing is saying that under Section 8B, each and every single chain of transfer in the title of a debt, for each and every chain of transfer, the assignee for collection at the end of that chain is going to have to identify all of the contents of the contracts that went before it. Now, certainly for an assignee for collection, that's required under Section 8B for the final assignment for collection purposes. No one is disputing that. The question this court needs to address is whether that needs to be identified when Citibank sells to Company A for an amount of money that is considered proprietary, and therefore it's not disclosed. And then Company A sells to Company B. A full transfer, a full sale, there's no question about transfer of title, but the consideration paid again is considered proprietary in a contract that is signed in South Dakota. That has nothing to do with Illinois law. What you're suggesting is now when you're talking about the transfer from Company P for assignment for collection purposes only to Unifund at the end of the chain of the title, which is bound by Illinois law, what you're suggesting is that Unifund will have to go back and address each and every single one of those transfers earlier in the chain of title. Will Unifund have to identify them? Yes. That's required under 2-403. Does Unifund have to identify the dates of those transfers? Yes. Again, identified under 2-403. There's no question that the transfers occurred. But does Section 8B apply? No. And if this court were to determine that it does apply, that would directly impact on the industry. What about the CLIS II Palisades, which Mr. Adelman was arguing about, from the buyer to the first collector? Correct. From the buyer to the first collector. In this complaint, in the fourth amended complaint, the only complaint that is at issue before this court, the specific information that would be necessary to state a claim under 8B for assignment for collection purposes, all of that was alleged. All of that was alleged in the documents by stating the date of transfer. That was in the forward flow agreement. And by identifying the amount of consideration paid for that transfer, that was included in the document under seal. And the court found that acceptable. That was presented in the underlying case in Shaw I. And it's still under seal with the circuit court. And the circuit court said that's adequate. That states the consideration paid. All of that information was provided. And it was provided specifically to address concerns this court raised in Shaw I, suggesting that 8B applies to each and every assignment for collection. Could that be considered an assignment for collection? If this court were to determine that it was an assignment for collection, because it was a transfer of legal title only, then in this particular case, all of the requirements of Section 8B for pleading under Section 8B have been addressed. And the same information was included in the documents that transferred the final transfer, the final assignment for collection from Palisades to Unifront. And so the trial court dismissed the case. Bless you. Because he found the information was insufficient from where? From Citibank to Unifront? From the first two transfers, from the sales. The trial court determined that those sales did not include all of the information identified in Section 8B. That's correct. Now, again, Justice Quinn, you were asking, what evidence is there that Mr. Shaw paid his debt, somehow is not responsible for this debt? But the point is evidence. The language you used, you asked what evidence is there. That's the next step in the process of this litigation. It is the next step. But the point is, that doesn't mean to be pleaded. I think it's an excellent question. I'm not suggesting that I disagree with the question. I'm saying you're asking for specific evidence. And in front of the trial court at the pleadings phase, that's not the information that you need to give to the trial court. This is what was addressed recently in Grant Hall v. Cavalry. It's the case that we cite extensively in our reply brief. I'll point you to some specific language. You read it, honestly. It was just me pulling this radial and it changed the oral argument. I like this question. Don't hang up on it. He wasn't hanging up on it. But, Your Honor, I was making such an excellent point. And now you're going to prevent me from doing so. That's in the eye of the beholder, I suggest. The point, sincerely, at this pleading phase is, Section 8B doesn't govern, and the federal district court stated this, Section 8B does not, quote, govern the documents that must be attached to an initial pleading, but merely requires that certain documents exist before a debt collection files a collection action. That's what we're talking about in this case. In order to comply with Section 8B, Unifund identified all of the information required under Section 8B and attached it to the complaint for assignments for collection. And by doing so, they met all of the statutory requirements to proceed past a motion to dismiss. So what we are asking this court to do is reverse the trial court's ruling granting the motion to dismiss and allow Unifund to go back and litigate this case in its entirety. Are there any other questions? Nope. In terms of these portfolios, I understand, if I heard correctly, it's a percentage of whatever the portfolio value is, but does interest accrues, penalties accrue on these? It adds to the debt, so as this goes along, the longer it goes along, the more value there is? That is a separate issue and, in fact, is currently an issue in litigation about what types of interests the agencies are allowed to charge and whether they're allowed to recover it. That, I think, is a separate issue, Your Honor, under a separate statutory provision. Under 8B, it says you have to tell the consideration for the assignment. How does the S&E determine what the appropriate number is? I think the S&E ñ I'm sorry, Your Honor, are you finished? How do they determine the value? I think, Your Honor, it's correct that the S&E needs to be given that information. Mr. Edelman's suggestion is it needs to be of public record. There's no question that the S&E has the ñ or, excuse me, that the debtor has the right to know what the amount of consideration is going to be. The larger question is whether that needs to be made of public record, and there is nothing in Illinois law that suggests that it does. But in terms of consumer protection, there's always a profit line in this, and, therefore, the consideration includes that cost. That's correct, but that profit line is very much proprietary because it depends on each individual debt collector and what their profit margin is. It's a spot market? It's a market that depends on some specific mathematical calculations, and it depends on things far above my pay grade that I can't entirely understand because computers do most of the calculations. The important thing, though, is that we do agree that the debtor has the right to know what that amount is in order to calculate any of those numbers, and that was done here. The debtor was given that information. So you're saying it is easily ascertainable? It is easily ascertainable to the debtor, yes, from looking at that information, yes. It is easily ascertainable to the debtor. Is it a matter of public record? No, but it doesn't need to be. Thank you very much. We thank both sides for the briefs, the oral arguments, and we want to thank the amici. Apparently that's plural for amicus, this is. We have a lot of friends. And we appreciate it. This case will be taken under advisement, and this Court will be adjourned.